## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ERNESTINE BOLIN<br>and ROBERT BOLIN | * <br> * <br> * | CIVIL ACTION<br>NO. 2:19-CV-11176 – NJB-DMD |
| VS. | * <br> * | JUDGE:  NANNETTE J. BROWN |
| LOWE'S HOME CENTERS, L.L.C.,<br>ET AL | * <br> * <br> * | MAG.:  DANA M. DOUGLAS |

* * * * * * * * * * * * * * * * * * *

### LOWE'S HOME CENTERS, L.L.C.'s
### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

At issue in the motion is whether an automatic sensor embedded in a doorway functioned properly at the time of Plaintiff's accident. Lowe's Home Centers, L.L.C.[1] Lowe's neither installed nor serviced the automatic door sensor as these services were contractually assumed by third party defendant, DH Pace. Discovery has confirmed that Lowe's had neither knowledge nor notice, actual or constructive, of any defect with the sensor or doors. Without evidence to establish an issue of material fact as to Lowe's actual or constructive knowledge or notice of the alleged defect, summary judgment is warranted, and Plaintiffs' claims against Lowe's should be dismissed with prejudice.[2]

### FACTUAL BACKGROUND

In the afternoon of April 28, 2018, as Ernestine Bolin[3] ("Ms. Bolin") walked through the front automatic doors to Lowe's garden center ("the doors"), she claims she was struck

---

[1] Unless indicated otherwise, as referenced herein, "Lowe's" refers to the store on Jefferson Highway where the accident that is the subject matter of this cause of action occurred.
[2] Dismissing the claims against Lowe's does not affect the plaintiffs' claims against the other defendants.
[3] At the time of the accident, Ms. Bolin was eighty-three years old.

1

when the doors unexpectedly closed on her, causing her to fall. She sustained a cut to her head which required stitches and broke her hip which required a surgical replacement. Robert Bolin, Ms. Bolin's son, ("Mr. Bolin") claims he witnessed this incident.

The sensor at issue was installed by DH Pace on March 15, 2016.[4] In addition to the installation, DH Pace also contracted with Lowe's to conduct annual preventative maintenance inspections and repair the doors as needed and requested by Lowe's.[5] Specifically, this service contract obligated DH Pace to maintain Lowe's automatic doors to ensure reliable operation and identify and replace defective and/or improperly functioning parts.[6] The terms of the contract prohibit repair assistance by Lowe's employees.[7]

Between DH Pace's installation of the sensor at issue and the date of the plaintiff's accident (approximately 23 months), the doors were serviced five (5) times by DCS/DH Pace. During the most recent annual Preventative Maintenance inspection prior to the accident, October 19, 2017, all doors, including the doors at issue, passed AAADM/ANSI standards according to the DCS/DH Pace technician.[8] In addition to the Preventative Maintenance inspection, a service call was made on January 11, 2018, approximately three months prior to Ms. Bolin's accident.[9] During the subsequent service call, the DH

---

[4] See the 5/15/16 repair report attached as Exhibit A.
[5] The Master Professional Service Agreement is voluminous and will be produced in its entirety if requested. The referenced pages are attached and identified by the DH PACE bates numbers.
DH Pace subsequently subcontracted with Door Control Services, Inc. ("DCS") to service Lowe's store between 2016 and March 2, 2018 (on or about the date that DH Pace acquired DCS).
[6] See Exhibit B, DH PACE0041, Section II (iii) (A).
[7] See Exhibit C, DH PACE0050, Section II (xiii) (D) (4).
[8] See the 10/19/17 service report attached as Exhibit D. Neither this PM inspection nor any other PM inspection in the 23 months since DCS/DH Pace installed the sensor into the doors identified a problem with the doors closing unexpectedly.
[9] See the 1/11/18 repair report attached as Exhibit E. Neither this service call nor any other requested servicing by Lowe's in the 23 months since DCS/DH Pace installed the sensor into the doors identified a problem with the doors closing unexpectedly.

Pace technician again certified the doors as AAADM compliant.[10] Lastly, from at least 2015 through July 2020, Lowe's has no record or documentation indicating an incident similar to this Plaintiff's accident involving the doors.[11]

Lowe's employees follow certain procedures when opening the store to ensure that the store's automatic doors are functioning properly. In discovery, DH Pace deposed Alicia Curtis, Lowe's Assistant Store Manager of Operations. Ms. Curtis testified as follows:

> Q. And when you open the doors, is there a procedure for opening the doors?
>
> A. Yeah. You unlock the door and you stand in the middle. You turn on the two switches. You make sure it opens while standing there and then make sure it closes when you walk away.[12]

She further testified that other procedures exist if something is wrong with the door:

> Q. If something is wrong with the door, what do you do?
>
> A. Put a work order in. Send in a work order through our service channel.[13]

And her testimony revealed that if it is a safety issue, she would shut the door down:

> Q. If there was a safety issue would you shut the door down?
>
> A. Yes.
>
> Q. Any safety issue?
>
> A. Yes[14]

---

[10] *Id.*

[11] See, Lowe's Responses to Request For Admission, Supplemental Interrogatory, and Supplemental Requests for Production Propounded by DH Pace Company, Inc., attached as Exhibit F, Response to Request Nos. 2, 3, 4.

[12] See, Ms. Curtis' Deposition attached as Exhibit G at Page 16, lines 17-22.

[13] See, Exhibit G at Page 21, lines 15-18.

[14] See, Exhibit G at Page 23, lines 13-17.

In her fourteen (14) years at Lowe's, Ms. Curtis testified that no one else claimed to have been injured by the doors; she never considered those doors unsafe at any point; she never reported those doors as being unsafe; and those doors are heavily trafficked.

Q. Did you ever consider that door unsafe at any point?

A. No.

Q. At any time you've been working at Lowe's?

A. Not that I can recall, no.

****

Q. Is that door busy? Do a lot of people go in and out of that door?

A. Yes.[15]

Prior to her accident, Ms. Bolin admitted that she had walked in and out of the same doors and experienced no problems.[16] And again, on the date of the accident, Ms. Bolin entered Lowe's through the same doors less than an hour earlier without any problem:

Q. All right, so the first time you walked in, the doors opened up?

A. Yes.

Q. And you went inside the store.

A. Yes.

Q. And the doors closed behind you?

A. Yes.

****

Q. So they opened up, and they closed, as far as you know, okay –

---

[15] See Exhibit G at Page 36, lines 19-22; Page 40, lines 7-14 and 23-25
[16] See Ms. Bolin's Deposition attached as Exhibit H at Page 79, lines 15-25.

A. Yes.

Q. –when you first went into the store?

A. Yes.

Q. Is that right?

A. Yes.[17]

## LAW AND ARGUMENT

Summary judgment is warranted when, after reviewing the pleadings, the discovery, and disclosure materials on file, and any affidavits, the Court determines that no genuine dispute of material fact exists.[18] The party seeking summary judgment always bears the initial responsibility to inform the Court of the basis for its motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.[19]Nevertheless, the mover need not produce evidence negating the existence of a material fact; rather, it need only point out "the absence of evidence supporting the other party's case."[20] Once the mover satisfies its burden, the nonmoving party must come forward with specific facts showing that a genuine dispute of material fact exists for trial.[21] The court must view all facts in the light most favorable to the nonmoving party.[22] Importantly, the nonmoving party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.[23] Notably, the mere existence of some factual dispute will not defeat summary judgment; "Rule 56 requires that the fact dispute

---

[17] See Exhibit H at Page 42, lines 12-22 and Page 43, lines 2-9.
[18] See Fed. R. Civ. P. 56; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986).
[19] *Celotex*, 477 U.S. at 323.
[20] *Id., see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).
[21] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[22] *Id.*
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

be genuine and material. Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment."[24]

This lawsuit stems from an alleged defect with Lowe's automatic sliding door: its sensor. To impose liability for this alleged defect, the Plaintiffs must prove (1) the thing was in the custodian's custody or control; (2) it had a vice or defect that presented an unreasonable risk of harm; (3) the defendant knew or should have known of the unreasonable risk of harm, and (4) the damage was caused by the defect.[25] If the plaintiff fails to prove any one of these elements, the claim fails.[26] Additionally, "in a suit against a merchant arising out of an alleged defect or unreasonably dangerous condition in or on the merchant's premises, a plaintiff must prove the essential elements of a standard negligence claim in addition to the requirements under La. R.S. 9:2800.6."[27]

To prevail on a merchant liability claim, the plaintiff must prove that (1) a fall occurred on the defendant's premises due to a condition which presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; (2) defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence; and (3) the defendant failed to exercise reasonable care.[28] The failure to prove any of these requirements is fatal to a plaintiff's cause of action.[29] When constructive notice is at issue, the plaintiff "must come forward

[24] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).
[25] La. C.C. art. 2317.1; *Wiltz v. Floor & Décor Outlets of America*, 15-516 (La. App. 5 Cir. 2/24/16), 186 So.3d 1204, 1208-09 (citing *Dauzet v. Thompson Const. Co., Inc.*, 02-989 (La. App. 5 Cir. 1/28/03) 839 So2d 319.
[26] *Dauzet*, 955 So.2d at 322
[27] *Wiltz v Floor & Décor Outlets of America*, 15-516, (La. App. 5 Cir. 2/24/16), 186 So.3d 1204, 1208-09 (citing *Collins v. Home Depot, U.S.A., Inc.*, 15-199 (La. App. 5 Cir. 12/9/15, 182 So.3d 324.
[28] *Wiltz*, 186 So.3d at 1209 (citing *Thomas v. Caesars Entm't Operating Co.*, 12-1202 (La. App. 4 Cir. 1/23/13), 106 So.3d 1279, 1282
[29] *Bryant v. Ray Brandt Dodge, Inc.*, 19-464 (La. App. 5 Cir. 3/17/20), 292 So.3d 190, 196 (citing *Dauzet*, 839 So.2d at 322).

with positive evidence showing that the damage causing condition existed for some period of time, and that such time was sufficient to place the merchant on notice of its existence."[30]

To carry their burden under either La. C.C. art. 2317.1 or La. R.S. 9:2800.6, plaintiffs must first prove that the defendant had, or should have had, some sort of knowledge of the condition which caused their injury.[31] Specifically, art. 2317 requires the plaintiff to prove that the defendant knew or should have known in the exercise of reasonable care should have known of the ruin, vice or defect which caused the damage while R.S. 9:2800.6 requires the plaintiff to prove that the defendant either created or had actual or constructive notice of the condition which caused the damage prior to the occurrence.[32] Nevertheless, summary judgment is warranted in this case under either La. C.C. art 2317.1 or La. R.S. 9:2800.6 because the plaintiffs cannot show that Lowe's had either knowledge or notice of the alleged defect in the doors at issue.

I.   **Plaintiffs can offer no evidence to show that Lowe's had actual or constructive knowledge of an allegedly defective automatic sensor embedded in the doors at issue.**

Constructive knowledge "imposes a reasonable duty to discover apparent defects in things under the defendant's garde" and may be found "if the conditions that caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury."[33]

---

[30] *Id* at 196-97 (citing *White v. Wal-Mart Stores, Inc.,* 97-0393 (La. 9/9/97), 699 So.2d 1081, 1082).
[31] *Jones v. Bank One Corp.,* No. 03-0925, 2004 WL 439894 at p.2 (E.D.La. 3/8/04).
[32] *Id.*at 2-3.
[33] See, *Thibodeaux v. Allstate Ins. Co.,* 293 So.3d 797, 805 (La. App 5th Cir. 2020); *Boutall v. Christakis, P.M., Co.,* 246 So.3d 1268, 1274 (La. App. 5th Cir. 2017).

Courts analyzing similar facts as those before the court, have dismissed claims against building owners where plaintiffs fail to establish notice or knowledge of the alleged defective condition: <u>Chessmore v. Wal-Mart Stores, Inc.</u>, NO.-H-08-1642, 2009 WL 3245413 (S.D. Tex. Oct. 5, 2009);[34] <u>Pitre v. Jefferson Parish Hospital Service District No. 2</u>, 2016-361 (La. App. 5th Cir. 12/28/16), 210 So3d 502, 506, *writ denied*, 2017-0150 (La. 3/13/17), 216 So.3d 802; and <u>Daniel v. Clarion Inn & Suites</u>, 16-0760 (La. App. 4th Cir. 2/22/17), 214 So.3d 38.

In <u>Chessmore</u>, the plaintiff was injured on February 24, 2007, when Wal-Mart's exterior automatic door rapidly closed on her right forearm.[35] She argued that Wal-Mart had actual " 'ongoing knowledge of problems with the doors' because Stanley had been called to inspect and service the doors in November 2006 and in February 2007 had been called to repair the interior doors and had been working on them 'for three days leading up to the injury.'"[36] Additionally, the plaintiff testified in her deposition that "after the incident, a Wal-Mart assistant manager said 'the doors had been worked on two days before, and they were still having problems with them.'"[37]

After concluding that the doors did not present an unreasonably dangerous condition,[38] the district court found that the undisputed evidence showed "as a matter of law, Wal-Mart lacked constructive knowledge of any unreasonably dangerous condition

---

[34] Texas law regarding premises liability and constructive knowledge is similar to Louisiana law such that this case is informative as both cases contain comparable relevant facts.
[35] 2009 WL 3245413 at *1.
[36] *Id.* at *6.
[37] *Id.*
[38] Stanley was called to Wal-Mart a few days before the incident to address slow-closing interior doors, not the exterior door that caused the accident. Because Wal-Mart called Stanley, had the problem repaired, and saw no continued problem on the day of the accident, the district court concluded that the record contained no "basis to conclude that Wal-Mart knew that the automatic doors had a problem that made them unreasonably dangerous on the date Chessmore was injured." 2009 WL 3245413 at *6.

in the doors."[39] This undisputed evidence included Stanley completing its repair work and finding the equipment to "check out o.k."; the assistant store manager testing Stanley's work and finding the doors to be functioning properly; on the day of and prior to the plaintiff's incident, the assistant store manager entering without issue both sets of automatic doors four times, stating "both sets of doors were operating properly each time I walked through the doors;" no evidence of any other employee or customer reporting a problem with the doors throughout the day; if a problem did exist, it was not readily observable; and a reasonable inspection would not have revealed a dangerous condition.[40]

Here, as in Chessmore, summary judgment is warranted. At both the Preventative Maintenance inspection and service call performed six and three months, respectively, prior to Ms. Bolin's accident, a DH Pace technician certified the doors as industry compliant. Additionally, on the day of, and for at least three (3) years prior to Ms. Bolin's accident, Lowe's did not receive any complaints about these doors working improperly. Moreover, no evidence shows that these heavily trafficked doors ever malfunctioned in a way causing an accident similar to Ms. Bolin's. Further, Plaintiffs provide no evidence that these doors were believed to be unsafe, and also testified that on the day of the accident, they entered and exited these doors without incident.[41]

In Pitre v. Jefferson Parish Hospital Service District No. 2, the Louisiana Fifth Circuit Court of Appeal held the hospital not responsible for fatal injuries when automatic

---

[39] Id. at *7.
[40] Id.
[41] See Exhibit H, Page 27, lines 5-15; Page 79, lines 7-11; and Mr. Bolin's Deposition attached as Exhibit I, Page 24, lines 5-23.

doors struck the plaintiff.[42] While leaving the hospital, the plaintiff, an 87 year old lady using a walker, attempted to exit the hospital when the automatic doors slammed shut on her and knocked her to the floor.[43]

Regardless of evidence showing that the hospital knew the automatic doors did not comply with ANSI standards, the trial court found, and the appellate court affirmed, that the hospital did not have notice that the doors were defective, unsafe, or presented an unreasonable risk of harm. Both courts based this finding on three specific facts: (1) Door Controls, Inc. (service provider for the hospital) did not state that the doors with outdated sensors were defective, unsafe or presented an unreasonable risk of harm; (2) if Door Controls, Inc. thought they did, they would have taken the doors out of service; and (3) this was the only accident of its kind to occur with the doors in question.[44]

As in Pitre, no evidence in this matter shows that any service technician ever informed Lowe's that either the sensor or the doors were defective, unsafe, or presented an unreasonable risk of harm. On the contrary, DH Pace's technicians affirmatively and repeatedly represented that the doors complied with ANSI safety standards. Discovery has revealed no other instance where an accident like this occurred with Lowe's doors. Next, Lowe's had in place an annual Preventative Maintenance program with a third-party contractor to ensure proper functioning of the doors. Preventative Maintenance inspections occurred prior to this accident and on all occasions, the doors were certified as satisfying ANSI standards.

---

[42] Pitre, 210 F.3d at 502.
[43] Id. at 504.
[44] Pitre, 201 So.3d at 508.

Finally, in <u>Daniel v. Clarion Inn and Suites</u>,[45] the plaintiff walked into unmarked automatic glass doors that failed to open properly and suffered a broken nose. The trial court granted summary judgment finding that the plaintiff had nothing to show knowledge of a defect by the defendant.[46] Prior to his accident, the plaintiff admitted to entering and exiting the automatic doors six to eight times; each without incident. Immediately prior to the accident, video shows the doors opened automatically a number of times for other guests. The court affirmed the trial court's granting of summary judgment finding that the plaintiff did not establish proof sufficient to show he could meet his evidentiary burden at trial.

Here, as stated above, Plaintiffs, as well as many other customers, walked through the doors without incident from the time Lowe's opened at 6:00 a.m. until Plaintiff's accident around 2 p.m. Like the plaintiffs in <u>Daniel,</u> neither Ms. Bolin nor her son offer any evidence that they can meet their evidentiary burden at trial to prove Lowe's had actual or constructive knowledge of a defect with the doors. To the contrary, discovery reveals, from all accounts, the doors worked properly and were safe in the years leading up to the accident, and Lowe's thus had no notice they presented a risk of harm, unreasonable or otherwise, at the time of Ms. Bolin's accident. The doors were routinely inspected and serviced and on each occasion were certified by DH Pace – door professionals -- that they were in compliance with ANSI standards. In sum, without evidence to show that Lowe's had actual or constructive knowledge of a defect, the Plaintiffs cannot establish a genuine issue of material fact, and Lowe's is entitled to summary judgment as a matter of law.

---

[45] 214 So.3d 38 (La. App. 4th Cir. 2017).
[46] *Id.* at 38-39.

II.     **Plaintiffs can offer no evidence to show that Lowe's created or had actual or constructive notice of an allegedly defective automatic sensor embedded in the doors at issue.**

As an initial matter, no evidence shows that Lowe's created the alleged defect as the sensor was installed and maintained by a third party -- DH Pace.

"Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The Louisiana Supreme Court has held that when a plaintiff relies upon constructive notice to prove his case, he must come forward with positive evidence to show that the damage-causing condition existed for "some period of time," and that such time was sufficient to place the defendant on notice of its existence.[47] "Because it is the claimant's burden to prove its existence for some period of time, the absence of evidence cannot support the claimant's cause of action."[48] While the time period need not be a specific number of minutes or hours, constructive notice mandates that the plaintiff prove the condition existed for some time period prior to the fall.[49] "This is not an impossible burden."[50]

Louisiana courts routinely grant summary judgment because the plaintiff cannot show constructive notice as required by La. R.S. 9:2008.6. For example, in Burns v. Sedgwick Claims Mgmt. Services, summary judgment was granted because the plaintiff provided no evidence to show that the cause of her fall was present long enough to create

---

[47] See White v. Wal–Mart Stores, Inc., 699 So.2d 1081 (La.1997).
[48] Id. at 1086.
[49] Kennedy v. Wal–Mart Stores, Inc., 733 So.2d 1188, 1191 (La.1999).
[50] Id.

constructive notice.[51] Similarly, in <u>Guidry v. Murphy Oil USA, Inc.</u>, the court granted summary judgment based on an insufficient showing of constructive notice as the plaintiff entered and exited the store without incident prior to accident.[52] Additionally, in <u>Brown v. United States,</u> the court found no constructive notice as the plaintiff "navigated this area of the store on numerous prior occasions without issue" and no other similar incidents occurred in the area where the accident happened.[53] Finally, in <u>Mayes v. Wausau Underwriters Ins. Co.,</u> summary judgment was granted because the inspection of an object with a hidden defect that caused the plaintiff's accident would not have provided notice sufficient to meet the plaintiff's burden of proof.

As applied in this case, for the same reasons used in the above cases, summary judgment is warranted. On the date of Ms. Bolin's accident, she and her son as well as many other customers walked through the doors without incident from the time Lowe's opened at 6:00 a.m. until her accident at 2 p.m. Additionally, discovery revealed (1) the doors worked properly and were safe in the years leading up to the accident; (2) on the day of, and for at least three years prior to Ms. Bolin's accident, Lowe's received no complaints about these doors working improperly; (3) no other incidence where an accident like this occurred with these doors; and (4) the Plaintiff herself used these doors earlier that day without issue. Moreover, Lowe's did not install or maintain the sensor, and the doors were routinely inspected and serviced (by a third party) and on each occasion were certified as in compliance with ANSI standards. Plaintiffs simply cannot offer any evidence sufficient to prove that Lowe's had notice, actual or constructive, to meet their

---

[51] *Burns*, 14-421 (La. App. 5 Cir. 11/25/14), 165 So.2d 147, 152.
[52] *Guidry*, 2105 WL 5177569 at p.5-6 (M.D. La. 9/13/15).
[53] *Brown*, 2017 WL 3267337 at p.15 (E.D. La. 8/1/17).

burden of proof. Without such evidence, the Plaintiffs cannot establish a genuine issue of material fact, and Lowe's is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Lowe's prays its Motion for Summary Judgment be granted, and Plaintiffs' claims against Lowe's be dismissed with prejudice at Plaintiffs' sole cost.

Respectfully submitted,

*/s/Paul J. Politz*

Paul J. Politz, La. Bar No. 19741
Sarah M. Kalis, La. Bar No. 37186
TAYLOR, WELLONS, POLITZ & DUHE, APLC
1515 Poydras Street, Suite 1900
New Orleans, Louisiana 70112
Telephone:  (504) 525-9888
Facsimile:  (504) 525-9899

*Counsel for Lowe's Home Centers, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading has been served on all counsel of record by electronic notification by the CM/ECF system on this 3rd day of December, 2020.

*/s/Paul J. Politz*

TAYLOR, WELLONS, POLITZ & DUHE, APLC