## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ERNESTINE BOLIN and**                         **CIVIL ACTION**
**ROBERT BOLIN**


**VERSUS**                                      **NO. 19-11176**


**LOWE'S HOME CENTERS, L.L.C.,**                **SECTION: "G"**
**ET AL.**


## ORDER AND REASONS

In this litigation, Plaintiffs Ernestine Bolin ("Ms. Bolin") and Robert Bolin ("Mr. Bolin") (collectively, "Plaintiffs") bring suit against Lowe's Home Centers, L.L.C. (Lowe's), Stanley Access Technologies, L.L.C. ("Stanley"), and DH Pace Company, Inc. ("DH Pace") (collectively, "Defendants"), alleging that Ms. Bolin was injured when automatic doors at a Lowe's store in Jefferson, Louisiana closed on her and caused her to fall.[1] Before the Court are Stanley's "*Daubert* Motion in *Limine*,"[2] DH Pace's "Motion in Limine to Exclude Plaintiff's Expert, Ruben Urbina, Jr.,"[3] Plaintiffs' "*Ex Parte* Motion for Leave to File Supplemental Opposition to *Daubert* Motion *in Limine* Filed by DH Pace Company, Inc."[4] and DH Pace's "Motion to Strike Plaintiffs' Supplemental Opposition Memorandum and Affidavit of Ruben Urbina."[5] Considering the

---

[1] Rec. Doc. 1-4; Rec. Doc. 20.

[2] Rec. Doc. 48.

[3] Rec. Doc. 49.

[4] Rec. Doc. 68.

[5] Rec. Doc. 69.

motions, the memoranda in support and opposition, the record, and the applicable law, the Court denies the two motions in limine, denies as moot the motion for leave to file a supplemental opposition, and denies as moot the motion to strike.

## I. Background

On April 22, 2019, Plaintiffs filed a complaint against Lowe's and Stanley in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[6] On June 12, 2019, Defendants removed the case to this Court asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[7] On December 18, 2019, Plaintiffs filed an amended complaint, adding DH Pace as a defendant.[8]

In the Amended Complaint, Plaintiffs allege that they went to a Lowe's store in Jefferson, Louisiana on April 28, 2018.[9] Plaintiffs claim that Ms. Bolin attempted to walk to Lowe's outdoor garden center through open automatic doors but that the doors closed as she was walking through.[10] Plaintiffs assert that the closing doors hit Ms. Bolin, causing her to fall and injure her head and right hip.[11] Plaintiffs allege that Ms. Bolin was taken by an ambulance to the emergency room where it was determined that her hip was broken and needed to be replaced and that she required several stitches on her head.[12]

Plaintiffs seek damages for Ms. Bolin's physical injuries, pain and suffering, emotional

---

[6] Rec. Doc. 1-4.

[7] Rec. Doc. 1.

[8] Rec. Doc. 20.

[9] *Id.* at 2.

[10] *Id.* at 3.

[11] *Id.*

[12] *Id.*

trauma, and loss of enjoyment of life, as well as Mr. Bolin's loss of consortium and mental anguish from witnessing the alleged incident.[13] Plaintiffs bring claims against Lowe's as the alleged premises owner or lessee, Stanley as the company allegedly "responsible for the manufacture and installation . . . of the automatic doors where Ms. Bolin fell," and DH Pace as the company allegedly responsible for the servicing of the automatic doors.[14]

On December 28, 2020, Stanley filed a motion to exclude Plaintiff's expert, Ruben Urbina.[15] On the same day, DH Pace filed a motion to likewise exclude Mr. Urbina.[16] On January 5, 2021, Plaintiffs filed an opposition to both motions.[17] On January 20, 2021, with leave of Court, DH Pace filed a reply in further support of its motion to exclude Mr. Urbina.[18] On January 13, 2021, Plaintiffs filed an "*Ex Parte* Motion for Leave to File Supplemental Opposition to *Daubert* Motion *in Limine* Filed by DH Pace Company, Inc."[19] On January 15, 2021, DH Pace filed a "Motion to Strike Plaintiffs' Supplemental Opposition Memorandum and Affidavit of Ruben Urbina."[20] On February 2, 2021, Plaintiffs filed an opposition to the motion to strike.[21] On February 9, 2021, with leave of Court, DH Pace filed a reply in further support of the motion to

---

[13] *Id.* at 7.

[14] *Id.* at 3–7.

[15] Rec. Doc. 48.

[16] Rec. Doc. 49.

[17] Rec. Doc. 55; Rec. Doc. 56.

[18] Rec. Doc. 71.

[19] Rec. Doc. 68.

[20] Rec. Doc. 69.

[21] Rec. Doc. 76.

strike.[22]

## II. Parties' Arguments

*A.*     ***Stanley's Motion to Exclude Mr. Urbina***

    **1.**     **Stanley's Arguments in Support of the Motion**

Stanley asserts that Ruben Urbina should be excluded from testifying as Plaintiffs' expert because Plaintiffs have failed to provide an adequate expert report as required by Federal Rules of Evidence 702 and 703.[23] Stanley alleges that Plaintiffs submitted a letter to Defendants on behalf of Mr. Urbina, but argues that the letter does not constitute an expert report.[24] Stanley alleges that the letter "is not dated and is not signed" and "does not include any opinions and/or conclusions."[25] Stanley further contends that Mr. Urbina lacks education and expertise in automatic doors and sensors.[26] In sum, Stanley argues that Mr. Urbina "does not possess scientific, technical, or other specialized knowledge that will help the jury to understand the evidence or to determine a fact in issue."[27]

    **2.**     **Plaintiffs' Arguments in Opposition to the Motion**

In opposition, Plaintiffs argue that "Stanley lacks any standing or interest in challenging Plaintiff's [sic] expert, Ruben Urbina . . . because Mr. Urbina's conclusions mirror those of Stanley's own expert and do not, in any event, implicate Stanley in any way."[28] Plaintiffs contend

---

[22] Rec. Doc. 79.

[23] Rec. Doc. 48-1 at 1.

[24] *Id.*

[25] *Id.* at 2.

[26] *Id.*

[27] *Id.* at 3.

[28] Rec. Doc. 55 at 1.

that Stanley "lacks any interest in seeking the relief it requests" because Mr. Urbina's testimony does not affect Plaintiffs' claims against Stanley.[29] Instead, Plaintiffs argue that Mr. Urbina's testimony confirms the testimony of Stanley's own expert that DH Pace had improperly set the automatic doors' sensor.[30]

Plaintiffs further argue that Stanley has sufficient information on Mr. Urbina's opinions because Stanley deposed Mr. Urbina and because Plaintiffs now seek to attach a supplemental report to their opposition.[31] Plaintiffs contend that "any deficiencies" in the initial letter Plaintiffs sent to Stanley concerning Mr. Urbina's expert testimony "were surely remedied by his deposition."[32] Moreover, Plaintiffs claim that Mr. Urbina's report did provide conclusions, namely that the sensor's settings were improperly set.[33]

Finally, Plaintiffs argue that Mr. Urbina "is more than adequately qualified as an expert on automatic doors."[34] Plaintiffs assert that Mr. Urbina has "over (13) years of experience inspecting and serving automatic doors" and is a "Certified Inspector" at a "respected firm."[35] Plaintiffs argue that Mr. Urbina is not offered as "an expert in designing or manufacturing automatic doors," but instead as an expert in inspecting automatic doors.[36]

---

[29] *Id*. at 6.

[30] *Id*.

[31] *Id*. at 5; Rec. Doc. 55-6.

[32] Rec. Doc. 55 at 7.

[33] *Id*.

[34] *Id*.

[35] *Id*. at 3.

[36] *Id*. at 8.

### B.    DH Pace's Motion to Exclude Mr. Urbina

### 1.    DH Pace's Arguments in Support of the Motion

Like Stanley, DH Pace argues that Mr. Urbina should be precluded from testifying as an expert.[37] DH Pace first argues that Mr. Urbina's expert report is deficient under Federal Rule of Civil Procedure 26(a)(2)(B).[38] DH Pace claims that the report does not meet the requirements set out in Rule 26(a)(2)(B) because the report (i) is not signed, (ii) fails to list the facts used by Mr. Urbina in crafting his conclusions, and (iii) fails to provide any opinion "as to the negligence of any particular defendant."[39]

Second, DH Pace argues that Mr. Urbina is unqualified to testify under Federal Rule of Evidence 702.[40] DH Pace asserts that because "Mr. Urbina's qualifications do not entail engineering, design, or manufacturing," he is unfit to testify as to whether the doors and the sensor constituted an unreasonable risk of harm at the time of the alleged incident.[41] DH Pace alleges that "Mr. Urbina's knowledge about the [doors' sensor] is based solely upon the Stanguard Manual" which "in itself, is self-explanatory" and therefore, "Mr. Urbina's qualifications do not give him any greater technical insight into the meaning of the manual . . . such that he can assist the trier-of-fact in determining the relevant issues in the case." [42]

Third, DH Pace argues that Mr. Urbina's opinions are "not based on sufficient facts or

---

[37] Rec. Doc. 49.

[38] Rec. Doc. 49-1 at 7.

[39] *Id.* at 8.

[40] *Id.*

[41] *Id.* at 9.

[42] *Id.*

data" and therefore fail to satisfy Federal Rule of Evidence 702(B). [43] DH Pace alleges that Mr. Urbina's opinion was not based on measurements, notes, or the surveillance video of the day of the alleged incident at Lowe's. [44] Without "precise measurements, notes about time delays, photographs, and/or video," DH Pace alleges, Mr. Urbina "will not be able to make any connection between (1) the findings in his report/inspection and (2) the incident at issue in this case." [45]

Fourth, DH Pace claims that Mr. Urbina is unqualified to testify as an expert because he utilized unreliable principles and methods in crafting his opinion. [46] DH Pace argues that Mr. Urbina has never previously testified as an expert and has not published articles on automatic doors. [47] DH Pace claims that "there is no detailed map, drawing, or other documentation" that backs up Mr. Urbina's opinion. [48] Moreover, DH Pace alleges that Mr. Urbina can point to "no reliable principle or method by which he could render an opinion as to causation for this accident." [49]

Fifth, and finally, DH Pace alleges that Mr. Urbina has not applied reliable principles or methods to this case. [50] DH Pace contends that Mr. Urbina did not review surveillance video from Lowe's on the day of the alleged incident, has failed to perform any testing of the sensor, and

---

[43] *Id.* at 10.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 11.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 12.

[50] *Id.*

failed to specify the standard he used in investigating the doors.[51]

**2.      Plaintiffs' Arguments in Opposition to the Motion**

Plaintiffs respond that Mr. Urbina's expert report is sufficient under Federal Rule of Civil Procedure 26(a)(2)(B).[52] Plaintiffs concede that Mr. Urbina's report had "minor deficiencies," including that the report was not signed and did not include specific measurements, but allege that the errors are harmless and irrelevant because counsel for DH Pace was present when Mr. Urbina carried out his inspection.[53] Further, Plaintiffs argue that Mr. Urbina's testimony is being offered only on the issue of whether the automatic doors at Lowe's were functioning properly and therefore, Mr. Urbina was not required to inspect external documents or surveillance video.[54]

Next, Plaintiffs argue that Mr. Urbina is qualified to testify as an expert.[55] Plaintiffs assert that Mr. Urbina has been working as a certified inspector of automatic doors for 13 years.[56] Plaintiffs point out that Mr. Urbina runs his own company which inspects doors for "major clients."[57] Plaintiffs argue that Federal Rule of Evidence 702 does not require "any particular level of education."[58] Further, Plaintiffs claim that Mr. Urbina's testimony would be valuable to a jury tasked with deciding whether or not DH Pace is liable for Ms. Bolin's injuries.[59]

---

[51] *Id.*

[52] Rec. Doc. 56 at 8.

[53] *Id.* at 9.

[54] *Id.*

[55] *Id.* at 10.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 11.

[59] *Id.* at 11–12.

Third, Plaintiffs contend that Mr. Urbina's opinion rests on reliable facts and data.[60] Plaintiffs argue that Mr. Urbina is not required to provide "precise measurements" in support of his opinion but instead allege that Mr. Urbina's report, comprised of his "inspection sheet and a brief summary of his findings," is sufficient.[61]

Fourth, Plaintiffs claim that Mr. Urbina utilized reliable methods in forming his opinion.[62] Plaintiffs contend that Mr. Urbina is not required to have testified previously as an expert witness or to have published articles on automatic doors in order to qualify as Plaintiffs' expert in the instant litigation.[63] Further, Plaintiffs claim that Mr. Urbina performed a standard inspection and is not required to "lay out, with exacting particularity, every element" of the inspection in order to show that his methods were reliable.[64]

Finally, Plaintiffs allege that Mr. Urbina reliably applied his methods to this case.[65] Plaintiffs assert that "Mr. Urbina's application of his methods to this case relate to performing a proper inspection of the door and identifying the nature, scope, and source of any problems therewith, not in reviewing unrelated factual evidence and rendering lay opinions that are supposed to be left to the jury."[66] Plaintiffs claim that Mr. Urbina was not required to inspect the automatic doors' sensor itself because "his own observations demonstrated that such an analysis

---

[60] *Id.* at 12.

[61] *Id.*

[62] *Id.* at 13.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 14.

[66] *Id.*

was not necessary."[67]

### 3.   DH Pace's Arguments in Further Support of the Motion

In reply, DH Pace argues that Mr. Urbina's expert report has failed to make any connection between his inspection of the automatic doors at Lowe's and the cause of Ms. Bolin's injuries.[68] DH Pace contends that Mr. Urbina's opinion is irrelevant if he cannot explain "why the motion sensor would not have picked up Ms. Bolin, how Ms. Bolin's presence in the video relates to the alleged blind spot that he identified, and therefore how his [] inspection related to the accident at issue."[69] Without connecting his inspection to the facts of this case, DH Pace argues, Mr. Urbina is not assisting a jury with his testimony.[70] Therefore, DH Pace argues that "the deficiencies in Mr. Urbina's report are not mere technicalities cured by the deposition and supplemental report, which brings forth nothing new" but "[i]nstead, Mr. Urbina's lack of specifics and failure to comment upon the accident at issue, during the expert discovery phase, would amount to trial by ambush should he offer opinion testimony as to 'cause-in-fact' of Ms. Bolin's accident."[71]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[72] Rule 702, which governs the admissibility of expert witness

---

[67] *Id.*

[68] Rec. Doc. 71 at 2.

[69] *Id.* at 3.

[70] *Id.* at 5.

[71] *Id.* at 6.

[72] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[73] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[74]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[75] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[76] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[77] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[78]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing

---

[73] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[74] Fed. R. Evid. 702.

[75] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[76] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[77] *See Daubert*, 509 U.S. at 592–93.

[78] *See id.* at 590.

reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[79] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[80] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[81]

The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[82] The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[83]

A court's role as a gatekeeper does not replace the traditional adversary system,[84] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception

---

[79] *See id.* at 592–94.

[80] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[81] *Kumho Tire*, 526 U.S. at 152.

[82] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[83] Fed. R. Evid. R. 401.

[84] *See Daubert*, 509 U.S. at 596.

rather than the rule."[85] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[86] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[87]

## IV. Analysis

In the instant motions, Stanley and DH Pace seek to exclude Mr. Urbina's proposed testimony for three main reasons: (i) Mr. Urbina is not qualified to testify as an expert under Federal Rule of Evidence 702, (ii) Mr. Urbina's proposed testimony is unreliable under Federal Rule of Evidence 702, and (iii) Mr. Urbina's report does not comport with the requirements of Rule 26(a)(2)(B). The Court addresses each argument in turn.[88]

### A.    *Whether Mr. Urbina is Qualified to Testify*

Stanley and DH Pace both argue that Mr. Urbina is not qualified to testify under Federal Rule of Evidence 702.[89] Both put forth arguments surrounding Mr. Urbina's lack of formal postsecondary education and both assert that Mr. Urbina has never designed or manufactured automatic doors.[90] In response, Plaintiffs point to Mr. Urbina's work as a certified inspector of

---

[85] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[86] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[87] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal citations and quotation marks omitted).

[88] The Court notes that Plaintiffs attached a supplemental expert report to the opposition brief to both Stanley's *Daubert* motion and DH Pace's *Daubert* motion. Rec. Doc. 55-6; Rec. Doc. 56-6. However, in the supplemental report, Mr. Urbina appears to be offering essentially the same opinions as those provided in his initial report.

[89] *See, e.g.*, Rec. Doc. 49-1 at 8; Rec. Doc. 48-1 at 2.

[90] *See, e.g.*, Rec. Doc. 49-1 at 9; Rec. Doc. 48-1 at 2.

automatic doors for over 13 years and his job running his own company that "is responsible for inspecting and serving doors of major clients."[91] Plaintiffs contend that Mr. Urbina's testimony will assist the jury in understanding that "the settings on the doors were wrong, and but for that improper setting, the doors would probably not have closed on Ms. Bolin."[92]

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[93] Rule 702 gives the Court considerable discretion over the admission of expert testimony.[94] "To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'"[95]

Mr. Urbina is certified by the American Association of Automatic Door Manufacturers as a "Certified Inspector of power-operated automatic pedestrian doors."[96] He began working in the automatic door business in 2007 as a technician, servicing and installing automatic doors.[97] In 2014, Mr. Urbina founded Automatic Access Solutions, which now employs five individuals.[98]

---

[91] Rec. Doc. 56 at 10–11; Rec. Doc. 55 at 8.

[92] Rec. Doc. 56 at 11.

[93] Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 579.

[94] See *Suazo v. Atl. Sounding Co.*, No. 05-6043, 2009 WL 3254446, at *1 (E.D. La. Mar. 10, 2009) (Vance, J.).

[95] *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)), *cert. denied*, 546 U.S. 1089 (2006).

[96] Rec. Doc. 56-3.

[97] Rec. Doc. 56-4 at 9.

[98] *Id*. at 17.

In his role as the head of Automatic Access Solutions, Mr. Urbina continues to service and install automatic and manual doors.[99]

Mr. Urbina clearly has sufficient experience and knowledge in automatic doors to qualify as an expert in the instant case. Plaintiffs plan to offer Mr. Urbina's testimony on the issue of whether or not the automatic doors at Lowe's were functioning properly at the time of Ms. Bolin's alleged injuries.[100] This issue is relevant to the litigation at hand and will be helpful to the jury, and Mr. Urbina's 13-plus years of experience servicing and installing automatic doors has provided him with expertise in this field. To the extent that DH Pace and Stanley believe that Mr. Urbina is not qualified to opine on the facts at issue in this matter, they may attack his conclusions through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[101] The Court therefore declines to exclude Mr. Urbina's testimony on the ground that he is not qualified as an expert.

**B.      *Whether Mr. Urbina's Proposed Testimony Is Reliable***

Stanley and DH Pace raise numerous arguments in support of their claim that Mr. Urbina's opinions are unreliable under Federal Rule of Evidence 702. These arguments include: (i) Mr. Urbina's opinions are not based on sufficient facts or data, (ii) Mr. Urbina utilized unreliable methods to form his opinion, and (iii) Mr. Urbina failed to reliably apply his methods to the facts of the instant litigation.

As a general rule, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's

---

[99] *Id.*

[100] *See* Rec. Doc. 56 at 11.

[101] *Daubert*, 509 U.S. at 596 (citing *Rock*, 483 U.S. at 61).

consideration."[102] It is "the role of the adversarial system, not the court, to highlight weak evidence."[103]

The test of reliability is "flexible" and *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[104] In *Kovaly v. Wal-Mart Stores Texas, L.L.C.*, the Fifth Circuit acknowledged that, in considering the reliability of some professionals, such as pharmacists, certain *Daubert* factors will not readily apply, and courts "must consider other factors when determining admissibility, such as whether the expert has enough education and relevant experience to reach a reliable opinion."[105] Therefore, the Fifth Circuit "has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community."[106]

Here, Mr. Urbina relied on his specialized knowledge, sufficient facts, and reliable methods in forming his opinion. Mr. Urbina went to the Lowe's store and inspected the automatic doors that Ms. Bolin alleges caused her injuries.[107] His report appears to detail various steps of his inspection, including adjusting the settings on the sensor and walking toward the doors from

---

[102] *14.38 Acres of Land*, 80 F.3d at 1077.

[103] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

[104] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[105] 627 F. App'x 288, 291 (5th Cir. 2015) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)).

[106] *Pipitone*, 288 F.3d at 247.

[107] Rec. Doc. 56-5.

various angles to ensure proper operation. [108] This inspection was done based on Mr. Urbina's extensive experience with automatic doors and according to instructions laid out in the Stanguard Manual. Moreover, Mr. Urbina inspected the doors as instructed by the American Association of Automatic Door Manufacturers ("AADM"). [109] Plaintiffs are offering Mr. Urbina's testimony solely for the issue of whether the automatic doors were functioning properly on the day of Ms. Bolin's alleged injuries, and Mr. Urbina's report shows how he utilized inspection methods prescribed by AADM and the Stanguard Manual to determine that the sensor's settings "did not cover the width of the opening as required." [110]

DH Pace and Stanley remain free to argue to the jury, via cross-examination or competing testimony, that Mr. Urbina's report is based on insufficient facts. However, Rule 702 and the Supreme Court's ruling in *Daubert* suggest that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," rather than exclusion altogether, "are the traditional and appropriate means of attacking shaky but admissible evidence." [111] Therefore, the Court finds that Mr. Urbina's report and testimony need not be excluded on the ground that they are unreliable, and declines to exclude Mr. Urbina from testifying as an expert witness.

## C.     *Compliance with Rule 26(a)(2)(B)*

DH Pace argues that Mr. Urbina's report fails to meet the requirements of Federal Rule

---

[108] *Id.*

[109] Rec. Doc. 56 at 3.

[110] Rec. Doc. 56-5.

[111] *Daubert*, 509 U.S. at 596 (citing *Rock*, 483 U.S. at 61).

of Civil Procedure 26(a)(2)(B).[112] Specifically, DH Pace alleges that the report: (1) is not signed,

(2) does not include any measurements or critical facts used in reaching the proffered conclusion,

and (3) fails to provide any opinion on the negligence of any defendant.[113] In opposition, Plaintiffs

concede that the report was not signed but argue that this error was harmless.[114] Plaintiffs contend

that the lack of specific measurements in Mr. Urbina's report is irrelevant, as DH Pace was present

during Mr. Urbina's inspection.[115] Plaintiffs further argue that Mr. Urbina's opinion is being

offered as to whether the automatic doors were operating properly on the day in question, not on

liability for the entire case.[116]

Federal Rule of Civil Procedure 26(a)(2)(B) states:

Unless otherwise stipulated or ordered by the court, [an expert] disclosure must be
accompanied by a written report--prepared and signed by the witness--if the
witness is one retained or specially employed to provide expert testimony in the
case or one whose duties as the party's employee regularly involve giving expert
testimony. The report must contain:
    (i) a complete statement of all opinions the witness will express and
the basis and reasons for them;
    (ii) the facts or data considered by the witness in forming them;
    (iii) any exhibits that will be used to summarize or support them;
    (iv) the witness's qualifications, including a list of all publications
authored in the previous 10 years;
    (v) a list of all other cases in which, during the previous 4 years,
the witness testified as an expert at trial or by deposition; and
    (vi) a statement of the compensation to be paid for the study and
testimony in the case.

---

[112] Rec. Doc. 49-1 at 6.

[113] *Id.* at 6–8.

[114] Rec. Doc. 56 at 9.

[115] *Id.*

[116] *Id.* at 9–10.

"The expert report should be 'detailed and complete,' stating the testimony that will be presented during direct examination and the reasons therefore."[117]

As discussed above, Mr. Urbina's report relies on sufficient facts and lists the steps he took in carrying out his inspection and forming his conclusions. Moreover, Mr. Urbina provides an opinion on the topic of his proposed testimony—the functioning of the automatic doors on the day in question. While all parties agree that Mr. Urbina's report is not signed,[118] Mr. Urbina testified during his deposition that he made the report following his inspection at the Lowe's store.[119] Therefore, the Court will not exclude Mr. Urbina from testifying under Rule 26(a)(2)(B).

## V. Conclusion

Considering the foregoing reasons, the Court denies Stanley and DH Pace's motions to exclude the testimony of Plaintiffs' expert Ruben Urbina, Jr. Given that the Court declines to exclude Mr. Urbina's testimony based on the initial filings, it need not consider the supplemental opposition and affidavit submitted by Plaintiffs. Accordingly,

**IT IS HEREBY ORDERED** that Stanley's "*Daubert* Motion in *Limine*"[120] and DH Pace's "Motion in Limine to Exclude Plaintiff's Expert, Ruben Urbina, Jr."[121] are **DENIED**.

---

[117] *Honey-Love v. United States*, 664 F. App'x 358, 361 (5th Cir. 2016) (citing Fed. R. Civ. P. 26 Advisory Committee's Notes (1993 Amendments).

[118] Rec. Doc. 49-1 at 7; Rec. Doc. 48-1 at 2; Rec. Doc. 56 at 9.

[119] *See, e.g.*, Rec. Doc. 56-4 at 9–10, 13.

[120] Rec. Doc. 48.

[121] Rec. Doc. 49.

**IT IS FURTHER ORDERED** that Plaintiffs Ernestine Bolin and Robert Bolin's "*Ex Parte* Motion for Leave to File Supplemental Opposition to *Daubert* Motion *in Limine* Filed by DH Pace Company, Inc."[122] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant DH Pace's "Motion to Strike Plaintiffs' Supplemental Opposition Memorandum and Affidavit of Ruben Urbina[123] is **DENIED AS MOOT**.

**NEW ORLEANS, LOUISIANA,** this ___30th___ day of April, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[122] Rec. Doc. 68.

[123] Rec. Doc. 69.